IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN PALMER,                                    No. CIV S-08-0766-CMK

        Plaintiff,

   vs.                                          MEMORANDUM OPINION AND ORDER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are Plaintiff's motion for summary judgment (Doc. 14) and Defendant's cross-motion for summary judgment (Doc. 18).

///

///

///

//

## I. PROCEDURAL HISTORY

Plaintiff[1] applied for social security benefits on March 3, 2005.[2] In the application, Plaintiff claims his disability is caused by a combination of mental disease (borderline personality disorder), hepatitis C, and asthma. In his motion for summary judgment, he claims his disability is the result of several other ailments, both mental and physical, including

> chronic Hepatitis C, obesity, antisocial personality disorder, bipolar disorder, schizoaffective disorder, mood disorder, depression, substance abuse, lumbar spine degenerative disc disease, thoracic and lumbar spine disc narrowing, bilateral knee pain consistent with post-traumatic pain and degenerative joint disease, bronchial asthma, thoracic back pain, chronic back pain, knee pain, sciatica, arthritis, furunculosis of the right axillary area, acute diarrhea, and suspect colitis.

(Pl. Mot. for Summ. J (doc. 14) at 4).

He claims his disability began on June 1, 1976.[3] Plaintiff's claim was initially denied on October 12, 2005. Following denial of reconsideration on February 3, 2006, Plaintiff requested an administrative hearing. A hearing was held on March 8, 2007, before Administrative Law Judge ("ALJ") Mark C. Ramsey. In a June 9, 2007, decision, the ALJ concluded that Plaintiff is not disabled based on the following relevant findings:

1. The claimant's father met the fully insured status requirements of the Social Security Act.

2. The claimant has not engaged in substantial gainful activity since December 1, 2003, the recommended onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: anti-social personality disorder, mood disorder and methamphetamine abuse (20 CFR 404.1502(c) and 416.920(c)).

/ / /

---

[1] Plaintiff is also referred to as clamant.

[2] Plaintiff applied for Disability Insurance Benefit payments, Supplemental Security Income payments, and childhood insurance benefits.

[3] The ALJ used December 1, 2003 as the recommended onset date, as that was the date Plaintiff alleged he last worked.

|   |   |
|---|---|
| 4. | The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). |
| 5. | After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the mental demands of unskilled work that does not require frequent contact with the public or coworkers. The undersigned finds that the claimant does not have any exertional limitations. |
| 6. | The claimant has no past relevant work (20 CFR 404.1565 and 416.965). |
| 7. | The claimant was born on April 20, 1968 and was 35 years old, which is defined as a younger individual age 18-44, on the recommended disability onset date (20 CFR 404.1563 and 416.963). |
| 8. | The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964). |
| 9. | Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968). |
| 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966). |
| 11. | The claimant has not been under a disability as defined in the Social Security Act, from December 1, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |

The Appeals Council granted Plaintiff's request for review on January 2, 2008, based on the ALJ's failure to adjudicate Plaintiff's application for child's insurance benefits. In a February 12, 2008, decision, the Appeals Council adopted the ALJ's finding or conclusions regarding whether Plaintiff was disabled. The Appeals Council also determined Plaintiff did not have a severe impairment prior to the age of 22, and is not entitled to the receipt of child's insurance benefits prior to age 22. The Appeals Council made the following findings:

|   |   |
|---|---|
| 1. | The claimant is the child of the wage earner. |
| 2. | The claimant has not engaged in substantial gainful activity. |

3

   3. The claimant was unmarried at the time the application was filed, is still unmarried, and attained age 22 on April 20, 1990.

   4. Prior to age 22, the claimant did not have a severe impairment.

   5. The claimant is not currently under a disability which began prior to age 22.

This appeal followed.

## II. SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following: (1) medical records from Tehama County Mental Health, covering the period from May 18, 1989, through August 14, 1996 (CAR 205-220); (2) medical records from Redding Medical Center, covering the period from February 26, 1997, through April 2, 1999 (CAR 221-238); (3) medical records from St. Elizabeth Community Hospital, covering the period from August 18, 2002, through January 2, 2005 (CAR 239-307); (4) a psychiatric evaluation, Dr. Timothy Canty, dated June 27, 2005 (CAR 313-317); (5) a psychiatric review technique (DDS), dated July 22, 2005 (CAR 320-333); (6) a residual functional capacity assessment ("RFC") - mental (DDS), dated July 22, 2005 (CAR 334-339); (7) an internal medicine consultative examination ("CE"), Dr. Janet O'Brien, dated August 4, 2005 (CAR 343-349); (8) medical records from Lassen Medial Group, Dr. Heidi Mist, covering the period from June 8, 2005, through January 23, 2006 (CAR 360-376); (9) a psychiatric review technique (DDS), dated February 1, 2006 (CAR 337-390); (10) an RFC - mental (DDS), dated February 1, 2006 (CAR 391-394); (11) medical records from the California Department of Corrections, covering the period from February 23, 1999, through September 8, 2006 (CAR 395-696); (12) medical records from Napa State Hospital, covering the period from May 15, 1976, through December 13, 2002 (CAR 697-736); and (13) medical records from Corning Medical Associates, covering the period from April 13, 2005, through January 23, 2007 (CAR 755-775).

As discussed below, Plaintiff does not challenge the ALJ's analysis and conclusions regarding his mental impairments or any of his other aliments, except hepatitis C and obesity. The court summarizes the records relating to plaintiff's hepatitis C and obesity below.

### III. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### IV. DISCUSSION

In his motion for summary judgment, Plaintiff argues that the ALJ improperly discredited his allegations regarding hepatitis C and improperly failed to consider medical evidence regarding his obesity and its effect on Plaintiff's ability to work. In effect, Plaintiff argues: (1) the ALJ erred in his determination of Plaintiff's severe impairments, limited to his

obesity and hepatitis C; and (2) the ALJ erred in finding Plaintiff's testimony not credible. Plaintiff does not challenge the ALJ's findings as to any of his other alleged impairments (including mental impairments, asthma, knee pain, back pain, degenerative disc disease, etc.), the ALJ's findings as to his drug usage, the ALJ's evaluation of the medical opinions, or the ALJ's decision not to call a vocational expert to testify. A significant majority of the medical records contained in the CAR relate to Plaintiff's mental impairments and other aliments, which are not being challenged and are therefore not relevant. The medical records related to Plaintiff's hepatitis C and obesity are summarized and discussed below.

### A.     Severity Determination

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[4] In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is

---

[4] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

insufficient. See id.

### 1. Obesity

In 1999, obesity was removed from the Listing of Impairments. Obesity may still enter into a multiple impairment analysis, but "only by dint of its impact upon the claimant's musculoskeletal, respiratory, or cardiovascular system." Celaya v. Halter, 332 F.3d 1177, 1181 n.1 (9th Cir. 2003). Thus, as part of his duty to develop the record, the ALJ is required to consider obesity in a multiple impairment analysis, but only where it is "clear from the record that [the plaintiff's] obesity . . . could exacerbate her reported illnesses." Id. at 1182. However, a multiple impairment analysis is not required where "the medical record is silent as to whether and how claimant's obesity might have exacerbated her condition" and "the claimant did not present any testimony or other evidence . . . that her obesity impaired her ability to work" Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (distinguishing Celaya). Where a multiple impairment analysis is not required, the ALJ properly considers obesity by acknowledging the plaintiff's weight in making determinations throughout the sequential analysis. See Burch, 400 F.3d at 684.

Here, Plaintiff argues that the ALJ erred in failing to consider Plaintiff's obesity. "Even though obesity wasn't fully argued to the ALJ, the ALJ was still required to consider it." (Pl.'s Mot. Summ. J. (Doc. 14) at 10). He claims he is severely obese, and the ALJ erred by failing to find his obesity was a severe impairment. He then cites one treatment note wherein he complained to his treating physician of low back, buttock, and back leg pain. He also cites his own testimony regarding back, leg and knee pain, as well as his testimony regarding his limitations for sitting, walking, bending, and putting his shoes and socks on. Finally, he argues his obesity significantly limits his ability to do basic work activities and the ALJ therefore erred by failing to find his obesity is a severe impairment.

/ / /

Defendant responds that Plaintiff fails to support his allegations that his obesity limited his functional ability with any medical evidence. Defendant points to the CE's opinion that Plaintiff retains the ability to function despite his weight, and the lack of any other medical opinion regarding any limitation as a result of Plaintiff's weight.

There are very few medical records relevant to this issue. As mentioned above, most of Plaintiff's medical records relate to his mental health. However, the court notes that Plaintiff's weight has varied, as he claims, from 259 pounds, in 2001, to 327 pounds, in 2007. (CAR 652, 327). However, the court has not found, nor has plaintiff pointed to any medial opinion specifically related to his weight, or any limitation on his abilities related thereto.

Plaintiff had a complete internal medicine evaluation on August 4, 2005. (CAR 344-49). Dr. O'Brien set forth Plaintiff's chief complaints as: psychiatric problems, asthma, leg swelling, bilateral knee problems, mid-back pain, and hepatitis C. She noted that Plaintiff is a "[w]ell- developed, well-nourished obese man in no acute distress." (CAR 345). During the examination, Plaintiff demonstrated no guarding with moving about the examination room, had no difficulty walking down the hall, sitting in a chair, getting onto the examination table, and he "demonstrate[d] no difficulty removing his socks and shoes." (CAR 345). Plaintiff's was able to heel-walk, toe-walk, and tandem walk without difficulty, although he complained of pain with toe-walking on the left. He was able to perform squats and rises while holding onto furniture. His range of motion was only minimally limited at the dorsolumbar, shoulders, elbows, hips, and knees. His range of motion was normal elsewhere. He had normal strength throughout, as well as normal reflexes. Dr. O'Brien assessed Plaintiff's abilities, finding he should be able to stand and walk for six hours in an eight-hour workday, ambulate relatively well even over rough terrain, climb a few steps with the use of a handrail, sit for six hours in an eight-hour workday, lift and carry 50 pounds frequently and 100 pounds occasionally, and had no postural or manipulative limitations. (CAR 349).

///

1    Notably, there are no functional evaluations from any treating source in the record.
2 In addition, Plaintiff points to no treatment note discussing any limitations related to his obesity,
3 either alone or as exacerbating any other condition. Even the one treatment note he identifies,
4 from January 23, 2006, wherein he complains of low back, buttock, and back leg pain, where his
5 weight was noted at 307 pounds, there is no indication that his weight was contributing to his
6 pain. (CAR 360). Plaintiff was seen on January 23, 2006, as a follow up from a January 12,
7 2006, visit. (CAR 368-69). At the earlier visit, Plaintiff contributed his chronic back pain to two
8 motor vehicle accidents, in the 1980s and 2004. Dr. Mist, his treating physician, noted that he
9 appeared in no apparent distress, and was ambulating without difficulty. Dr. Mist originally
10 prescribed Baclofen and Voltaren for Plaintiff's sciatic and chronic back pain. At his follow up
11 visit, Dr. Mist prescribed Neurontin, as well as the continuation of Baclofen and Voltaren,
12 ordered x-rays, and suggested a possible referral to physical therapy if the x-rays were normal.

13    Plaintiff does not specify how his obesity limits his functional capacity, or how it
14 exacerbates his currently existing conditions. It is the plaintiff's obligation to establish a
15 connection between his excessive weight, impairments, and any relevant functional limitations.
16 See Burch, 400 F.3d at 683. "An ALJ is not required to discuss the combined effects of a
17 claimant's impairments or compare them to any listing in an equivalency determination, unless the
18 claimant presents evidence in an effort to establish equivalence." Id.

19    Here, there is simply no evidence of any functional limitations as a result of
20 Plaintiff's obesity that the ALJ should have, yet failed, to consider. Although Plaintiff's physicians
21 noted his weight in treatment notes, it does not appear that any physician indicated his obesity
22 either caused or exacerbated his impairments, or resulted in any functional limitations whatsoever.
23 Plaintiff has identified no medial records that the ALJ might have overlooked stating otherwise.
24 This is especially true given Dr. O'Brien's assessment of Plaintiff, and her finding that Plaintiff did
25 not have any functional limitations after her examination. Even the back pain he cites does not
26 provide any basis for finding that the ALJ should have considered his obesity. While in theory

9

excess weight may contribute to back pain, Plaintiff's back pain was not considered a severe condition and no functional limitations were assessed due to his back pain.

Additionally, Plaintiff did not raise his obesity as an impairment or limitation in his application for benefits or in his hearing testimony, instead focusing entirely on his other impairments. Plaintiff was represented by a non-attorney representative at the hearing, and neither of them offered any evidence or explanation to show how Plaintiff's obesity limited his ability to function. Even now, Plaintiff has failed to identify any concrete limitations, stating only that he testified that he can only sit for 10 minutes, walk no more than one-half block without pain, and needs assistance in putting on his shoes and socks. This is in contrast with Dr. O'Brien's observation that he can ambulate without difficulty, and had no difficulty removing his shoes and socks. He fails to identify any supporting evidence or complaint made to his doctors, for his claim that he cannot walk or sit for more than 10 minutes. Nor has he explained how his obesity exacerbates one or more of his conditions resulting in these limitations.

Therefore, the undersigned finds no error in the ALJ's failure to include obesity as a severe impairment. There is no evidence that his obesity has more than a minimal impact, at best, on his abilities. However, to the extent the ALJ should have acknowledge Plaintiff's obesity, the undersigned finds any such error to be harmless. See Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006); see also Burch, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless."). An error is harmless when it is "inconsequential to the ultimate nondisability determination." Stout, 454 F.3d at 1055. "[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fulling crediting the testimony, could have reached a different disability determination." Id. at 1056; see also Batson v. Comm'r, 359 F.3d 1190 (9th Cir. 2004) (applying a harmless error analysis where the ALJ's reasons were erroneous in part).

///

///

In this case, the court finds that no reasonable ALJ could conclude that plaintiff's obesity resulted in a severe impairment given the lack of any objective medical evidence suggesting that plaintiff's weight in any way impacted his ability to perform work-related activities. There simply was no need for the ALJ to mention plaintiff's weight as it was of no consequence. See Robbins v. Soc. Sec. Admin., 446 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at 1055-56). As mentioned above, Plaintiff never mentioned his weight as a problem until the instant motion for summary judgment. Specifically, he did not mention weight in his initial disability application, nor did his representative bring it out at the administrative hearing or in any post-hearing requests for reconsideration. Plaintiff was simply focused on his mental impairments (which are not being challenged here), hepatitis C, and asthma.

The court therefore finds no error in the ALJ's failure to include Plaintiff's obesity as a severe condition. To the extent the ALJ may have erred in not addressing Plaintiff's obesity, such error was harmless because it is inconsequential to the ultimate nondisability determination and no reasonable ALJ could have reached a different conclusion had the error not occurred.

### 2. Hepatitis C

In his decision, the ALJ found that:

> [t]he claimant alleges that he suffers from fatigue due to hepatitis c. The record shows that the claimant has tested positive for hepatitis c. (Exhibit 18F, page 293). However, testing shows that his liver functioning has not been affected by hepatitis c. (Exhibit 15F, page 3). Also, there is no evidence in the record that he has required treatment for hepatitis c or that this condition has affected his ability to function physically. (Exhibits 11F, 15F, 18F and 21F).

Plaintiff asserts there are several symptoms related to hepatitis C and liver dysfunction including weakness, malaise, anorexia and fatigue. He claims he was diagnosed with hepatitis C in 1990, reporting a problem with fatigue. He states that in December 2006, he complained to his treating physician of generalized malaise and fatigue, and in January 2007, his liver was tender to the touch during an examination. He points out that he testified to burning pain and soreness in his liver, and dizziness from his Hepatitis C. He also points to elevated ALT

and AST levels[5] in June 2005 and January 2007, which he states are indicators of liver injury. He claims it is noteworthy that the internal medicine CE was unaware of these test results. Plaintiff therefore contends the ALJ erroneously discredited Plaintiff's allegations regarding his fatigue and other symptoms of hepatitis C.

Defendant responds that Plaintiff has failed to show he actually experiences the symptoms which can be related to hepatitis C, and that the mere existence of hepatitis C is insufficient to prove that he experiences symptoms which result in a disabling condition. Defendant avers that Plaintiff's positive blood tests do not prove that he actually experiences the symptoms related to hepatitis C, nor do they prove the length of time he has experienced any of the alleged symptoms. In addition, Defendant argues Plaintiff never testified to fatigue, and his medical records do not support the presence of his alleged symptoms. Significantly, he alleges Plaintiff fails to allege that any doctor assessed functional limitations due to his hepatitis C, fatigue, weakness or malaise, and Plaintiff admitted to the CE that he had no symptoms related to hepatitis C. Defendant claims the only complaint of fatigue in the record was after Plaintiff was bitten by a black widow spider, and that was an acute complaint. In addition, he argues, there was only one record of any complaint of abdominal tenderness, but that was attributed to colitis not hepatitis.

Plaintiff's testimony at the hearing in regards to his hepatitis C was quite limited. He testified that his symptoms include a sore liver, which "was real painful one time, it felt, it was like burning right here." (CAR 62). He also testified that he had some internal bleeding in 2006, which he apparently believed was related to his liver, but he never obtained the x-ray which was recommended.[6] (CAR 62-63). He further testified that he experienced dizziness from the

---

[5] Plaintiff states that ALT is the abbreviation for alkaline phosphate or alanine aminotransferase and AST is the abbreviation for aspartate transaminase.

[6] As discussed below, the court finds it more probable that the bleeding and recommended x-ray were actually related to a possible colon disorder, and not related to his liver or hepatitis C.

hepatitis C, and that he was unable to obtain chronic care from his health care providers. (CAR 63-64). This is the extent of his testimony regarding his hepatitis C.[7]

A review of the medical records shows that Plaintiff has apparently never complained about any symptom related to his hepatitis C. While he has been diagnosed with hepatitis C, Dr. Mist noted in that his liver function was only minimally elevated.[8] (CAR 362). Dr. Mist also referred Plaintiff for a liver biopsy, but it does not appear that the biopsy was ever done. As Plaintiff argues his ALT and AST levels are indicators of liver damage, the court notes his levels over the years. In March 2000, blood results indicate that he was reactive to hepatitis C. (CAR 688). In May 2000, his AST level was at 60, his ALT level was at 124. (CAR 677). In June 2005, his AST was at 48, his ALT was at 56. (CAR 372). In January 2006, his AST was at 58, his ALT was at 88. (CAR 366). In January 2007, his AST was at 60, and his ALT was at 109. (CAR 769). The court found no medical treatment notes in which Plaintiff complained about any of the symptoms he claims are related to hepatitis C.

Plaintiff argues that he complained to his treating physicians of general malaise and fatigue relating to his hepatitis C, but the court finds the evidence to the contrary. On December 22, 2006, where he argues he complained of general malaise and fatigue, the court finds Defendant is accurate that Plaintiff's complaints were related to a spider bite. (CAR 756-57). In addition, he states he complained about having a tender liver to touch on January 23, 2007. The court observes that the doctor's notes from his January 23, 3007, office visit are somewhat illegible. It appears the doctor did observe that Plaintiff had a tender liver. However, the notes indicate that Plaintiff was seen for bowel symptoms, which the doctor suspected was due to a

---

[7] It is noteworthy that Plaintiff was represented at the hearing by Georgia McGreal, a non-attorney representative. The representative questioned Plaintiff in regards to his hepatitis C diagnosis. Even under this questioning, no testimony was given as to the fatigue Plaintiff now claims limits his ability to work.

[8] This notation appears to be in reference to results of his January 23, 2006, blood work, which indicates an AST level of 58 and ALT level of 88. (CAR 366).

possible colon disorder, colitis. The plan was to perform a barium enema and blood work. (CAR 756). It is unclear if this plan was completed. As stated above, there is nothing in the record which the court could discern, where Plaintiff complained of the symptoms he alleges are associated with hepatitis C. The only exception is his allegations of elevated ALT and AST levels. However, elevated ALT and AST levels do not specifically support his allegations that he experienced any of the possible symptoms caused by hepatis C, including fatigue.

In addition, while Plaintiff argues the CE was unaware of Plaintiff's elevated ALT and AST levels, she was aware of his hepatitis C diagnosis. As the Defendant points out, Plaintiff specifically told the CE that he could not think of any symptoms related to his hepatitis C.[9] He did report fatigue, indicating that he can only work, "cutting wood and doing landscaping," for 15 to 20 minutes before he "will 'get really tired'" and will have to take a break. He also stated he would be sore for three to four days afterwards. There is nothing to indicate his inability to work for more than 15 to 20 minutes was related to his hepatitis C. In fact, there is some suggestion that it may be more related to his asthma, as he expressed limited tolerance for exercising caused by shortness of breath. Either way, the examiner did not find fatigue impeded his ability to work in any way.

While the record includes a finding that Plaintiff suffers from hepatitis C, there is nothing in the record to support his assertion that it is so severe as to have more than a minimal effect on his ability to work. Elevated liver function without other symptoms is insufficient. The record is devoid of any evidence that Plaintiff suffers from any ill effects, other than a sore liver occasionally, as a result of his hepatitis C. Significantly, as discussed above, Plaintiff reported to the CE that he could not think of any symptoms related to his hepatitis C. While he also reported fatigue, there was no link between the fatigue and the hepatitis C, and the CE did not assess any

---

[9] Although it is unclear what medical records the consultative examiner had, which she referred to as "Section A of a form," the examination was completed in August 2005. The court notes that Plaintiff's elevated ALT and AST levels were indicated as early as May 2000. (CAR 677).

limitations due to fatigue.

The ALJ acknowledged Plaintiff's hepatitis C diagnosis, but found no adverse effect cause by the diagnosis. Plaintiff failed to meet his burden of establishing that his hepatitis C was anything more than a slight abnormality that had more than a minimal effect on his ability to work. He provided medical evidence, by way of laboratory findings, that he was diagnosed with hepatitis C, but failed to provide any medical evidence consisting of the signs or symptoms he experienced as a result of that diagnosis. The ALJ did not err in finding that Plaintiff's hepatitis C was not a severe condition.

### B.   Credibility Finding

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

/ / /

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

As set forth above, Plaintiff's testimony in regards to his hepatitis C was very limited. There is no indication that the ALJ specifically discredited his testimony. Instead, the ALJ found that while he has been diagnosed with hepatitis C, there was no evidence in the record that he had required any treatment or that that condition affected his ability to function physically. Plaintiff testified that he had a sore liver, which was very painful one time. He also testified that he experiences dizziness, which related to his hepatitis C. Finally he testified that he was unable

to obtain chronic care.

There is nothing from Plaintiff's testimony which, even if fully credited, would support his argument that he experienced significant fatigue that limited his ability to work and could lead to a finding of disability. Plaintiff simply did not testify that he experienced any fatigue at all, and he reported to the CE that he did not experience any symptoms related to his hepatitis C. Even if he was unable to get the chronic care he claims is unavailable to him, the lack of chronic care was not central to the ALJ's decision. The lack of any notable symptoms or complaints about his condition was sufficient to support the ALJ's finding. Plaintiff's argument that the ALJ improperly discredited his testimony is unsupported.

## V. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 14) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 18) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 28, 2009

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE